## Case No. 17,210.

### WARTMAN v. WARTMAN.

[Taney, 362.] [1]

Circuit Court, D. Maryland. April Term, 1853.

COMMITMENT FOR CONTEMPT—TRUST FUND—PAYMENT INTO COURT—DISOBEDIENCE OF ORDER—JUSTIFICATION—EFFECT OF INSOLVENCY.

1. On a bill, filed in January, 1852, praying that certain money held in trust by the defendant might be ordered to be brought into court, the defendant answered, admitting that he had the money in his hands, but resisting the claim to it set up by the complainant: on the 2d of November, 1852, some months after the defendant had answered the bill, a petition was filed by the complainant, asking that the money might be brought into court, and on this petition, an order was passed, directing the defendant to pay the money into court, or show cause for not doing so: the defendant did not obey the order, and excused his so doing, on the ground that the complainant was not entitled to the money, and that he had paid it away to the persons who were entitled: thereupon, a peremptory order was passed, requiring him to bring the money into court, but in indulgence to him, a proviso was annexed, that a bond with security should be deemed a compliance with the order: this order was also disobeyed by the defendant, and his answer was put in, assigning the same reason as before for refusing to comply with it: Held, that the defendant was guilty of contempt in parting with the fund, whilst the question as to its disposition was pending before the court.

2. The assertion of want of title in the complainant, was a question to be decided upon the final hearing; the only question upon the order was, as to the safety of the trust fund, pending the litigation, so that it might be forthcoming when the rights of the parties were finally decided.

3. As to the request, in the answer to the second petition, that the order be suspended till the final hearing, it was nothing more nor less than an application to the court to abandon the measures it had taken to secure the fund, because the defendant had determined not to comply with its orders.

4. The defendant, being in contempt for disobedience to the authority of the court, was not entitled to be heard on any motion, nor authorized to take testimony, or to proceed in any other manner, until he purged himself of the contempt.

5. After arrest and commitment, it was not admissible for the party to apply to have the attachment set aside, and the question of his commitment heard, on the ground that his noncompliance with the order of the court arose from his inability so to do, and not from an intention to contemn the court's authority: that he had been informed by his counsel that nothing would be done with the attachment, till the following term, when the whole case would be settled: and that he had been busy since, in procuring testimony, in order to prepare the case for a final hearing, and to show that the complainant had no right to the fund.

6. Before the attachment was issued, opportunity had been given him to show cause against it, and if any such cause existed, then, was the time to show it.

7. The question whether a contempt has or has not been committed, does not depend on the intention of the party, but on the act done.

[Cited in U. S. v. Anon., 21 Fed. 772.]

[Cited in Cartwright's Case, 114 Mass. 239.]

1 [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

8. Contempt is a conclusion of law from the act; and disobedience to the legitimate authority of the court is, by law, a contempt, unless the party can show sufficient cause to excuse it.
[Cited in Corbin v. Boies, 34 Fed. 699.]

9. If the defendant was not able, at the time he distributed the trust fund, to replace it, in case the court should order it to be brought in, or should finally decree in favor of the complainant, the distribution he made was not only in contempt of the authority of the court, but a fraudulent attempt to defeat the just rights of the complainant, if the decision should be ultimately in his favor.

10. If the matter were postponed till the time of the final hearing, it would not alter the case, as the question then to be first decided would still be upon the orders for the security of the fund; and there could be no final hearing till they were disposed of.

11. If he were now actually an insolvent debtor, and his property transferred to a trustee, appointed by the proper legal tribunal, this court would discharge him from the commitment for contempt, because he would be obliged, with his petition, to return a schedule of all his property; and the fact that it was all conveyed to the insolvent trustee, would show, that it was no longer in his power to pay the money into court, or give the security required for its forthcoming, if the final decision should be against him.

The defendant in this case was attached for contempt of court, in disobeying an order requiring him to bring into court, or give security for the forthcoming of, a sum of money, admitted, by his answer to a bill in equity, to be in his hands. Heard on application to be discharged from the attachment.

W. B. Prime, for complainant.

D. & J. Stewart and Wm. H. Norris, for defendant.

TANEY, Circuit Justice. In the case of Charles C. Wartman [by his next friend, John C. Bullit] against Michael K. Wartman, an application has been made to the court to discharge the respondent from the attachment heretofore issued against him, for a contempt in disobeying the order of the court, upon which attachment he is now imprisoned.

In deciding upon this application, it is necessary to review the proceedings prior to the attachment, and more especially, the orders of the court and the answers made to them by the defendant, which finally led to his commitment for a contempt.

It appears that Abraham Wartman, the father of the present defendant, devised to him a large sum of money, in trust for John K. Wartman (another son of the said Abraham), during his lifetime, and after his death, in trust for such child or children as the said John K. Wartman might thereafter have; and in default of such issue, the said fund was to be equally divided between the children of the testator. The will directed that the fund should be invested by his executors, during the lifetime of John K. Wartman, in stock or some other productive securities. This is the substance of the will and codicil of Abraham Wartman, so far as it is mate-

rial to state their provisions in deciding the question now before the court.

John K. Wartman, for whose benefit the trust was created by his father, is since dead; and the complainant, who is an infant, filed his bill, by his next friend [John C. Bullit], in which he alleges that he is the only child of John K. Wartman, and as such, entitled to the whole of this trust property, under the will of his grandfather, Abraham Wartman; and praying that Michael K. Wartman may be compelled to render an account of the amount in his hands, and to pay it over to the complainant. The bill also alleges that the money is unsafe in the hands of the defendant, and prays that the same may be brought into court, and invested in some safe and productive security, under the authority of this court.

The bill was filed on the 5th of January, 1852, and the defendant answered on the 20th of April following. He admits that he had, at that time, in his hands, in cash, $7,544.83 of the trust fund created for the benefit of John K. Wartman; he admits that he had refused to account for it with the complainant or his agents, or to pay it over to him, because, as he avers, the complainant is not the child of John K. Wartman; he also avers that the said John K. Wartman died without leaving any issue, and that the trust fund belongs to the children of the testator, of whom the defendant is one.

The district judge, having been counsel in the case, and the chief justice, being necessarily absent during the whole of the April term, 1852, attending the supreme court, no order could be taken at that term, upon the application in the bill for an order to bring the money into court; and the case was continued to the next term, the parties, by consent, issuing a commission to take testimony, in order to prepare the case for final hearing. At the beginning of the next term, that is, on the 2d of November, 1852, the complainant filed his petition, again averring that the trust fund was insecure, and praying that the defendant might be ordered to bring the money into court, to be invested, under the direction of the court, in some productive security, to await the final decision of the controversy then pending between the parties. Upon this petition, the court passed the usual order in such cases, directing the defendant to bring the money into court, on the 24th of that month, or to show cause to the contrary.

The defendant did not bring the money into court, and assigned as his reason for not doing so, that the complainant was not the son of John K. Wartman, and had no interest in the trust fund, and that the defendant had, therefore, felt it to be his duty to distribute it among the persons who were entitled to it, upon the death of John K. Wartman without children, and having thus disposed of it, he had no longer any trust funds in his hands.

Now, whether the complainant was or was

not the child of John K. Wartman, is a question for the court to decide, upon the final hearing of the cause, and not for the defendant; it is the very matter in issue. The defendant admitted that the trust fund was in his hands, when he filed his answer to the bill, and he knew that the application made in the bill, for an order upon him to bring the money into court, upon the ground that it was insecure in his hands, was pending before the court and awaiting its decision. And he now offers as a justification for his refusal to pay it into court, that, in his judgment, the complainant was not entitled to it, and that he had, therefore, paid it to those whom he considered entitled, regardless of any order the court might pass for the security of the fund, pending the controversy. In other words, that he had decided the matter in dispute for himself, and had determined to evade and defeat any order the court might make for the security of the fund, by paying it over to others, and thus putting it out of the reach of the process of the court.

The answer has, at least, the merit of frankness; but the avowal of the contempt he had committed, in parting with this trust fund, while the question as to its disposition was pending before the court, can hardly be received as a justification for his refusal to replace the money.

After such an answer, a peremptory order to bring the money into court, was a matter of course; but as it was possible, that the party might have acted under some error of judgment, and might be subjected to some inconvenience, by being compelled to replace the trust fund, and as the only object of the court was to place it in a state of safety, until the decision of the question in issue between the parties, a proviso was annexed to the order, by which it was directed that a bond, with security for the forthcoming of the money, provided the decision was finally in favor of the complainant, should be received as a compliance with the order to bring the money into court. It left it, therefore, optional with the defendant, to pay the money into court, or to give security for its forthcoming. The order was issued on the 3d of December, 1852, and the defendant directed to comply with it on or before the first day of January following.

This order was also disobeyed, and an answer put in reiterating the same things that he had stated in answer to the former order, and assigning the same reason for refusing to comply with it. There is one fact, however, stated in it, which did not appear in his former answer, that is, that in the distribution he made of the trust fund, he retained in his hands the one-third of it (upwards of $2,000), as his own share, and now declines bringing it into court, because he had appropriated it to his own use. He takes no notice whatever of the alternative which the order permitted, of giving security that the trust fund should be forthcoming to abide the final deci-

sion of the court; he does not allege that he is unable to give the security, and assigns no other reason for his disobedience of the whole order, but his belief that the complainant is not the son of John K. Wartman, and therefore, not entitled to the fund.

As regards his assertion in this answer that the complainant is not the son of John K. Wartman, it is altogether irrelevant to the matter in hand and out of place; that question is to be decided on final hearing. The only question upon the order was, as to the safety of the trust fund, pending the controversy, so that it might be forthcoming when the rights of the parties were finally decided by the court. And as to the request contained in this answer, that the order be suspended until the final hearing, it is nothing more nor less than an application to the court, to abandon the measures it had taken to secure the fund, because the defendant had determined not to comply with its orders, and to contemn its authority.

It is, moreover, proper to remark, that the defendant, being in contempt for disobedience to the authority of the court, is not entitled to be heard on any motion, nor authorized to take testimony, or to proceed in any other manner, until he purges himself of the contempt. This is the well-settled principle of chancery law, and it would be impossible for the court to enforce its just authority upon any other principle.

The chief justice being at Washington, attending the supreme court, no order could be taken on this answer until he returned to Baltimore. Immediately upon his return, the complainant applied for an attachment against the defendant, to compel his obedience; and the court being unwilling to proceed to extreme measures, without giving the defendant every opportunity of purging himself of the contempt which he had openly committed and avowed, it directed notice of the motion to be given to his counsel, that he might show cause, if any he had, why the attachment should not issue. His counsel appeared and was fully heard; his objections consisted in an application for delay until the final hearing, and an objection to the want of the proper averments of citizenship in the bill so as to give jurisdiction to the court. As relates to the application to abandon the order, it was altogether inadmissible, for the reasons already stated; and as to the defect in the bill, it appeared, upon examining the papers in the case, that it had long before been amended, by consent of counsel, and the amendment had no doubt escaped the recollection of the counsel for the defendant, when the objection was taken.

In this state of the case, nothing remained for the court, but to surrender its authority over this trust, or enforce obedience by an attachment; and an attachment was accordingly ordered, upon which the defendant was arrested, and committed to prison in obedience to the writ.

Since his arrest and commitment to prison by the marshal, he filed in court an application, stating that his non-compliance with the order to bring the money into court, or to give security, arose from his inability to do either, and not from any intent to contemn the process of the court; that he had been informed by his counsel, that nothing would be done until the April term, when the whole case would be settled; and that he had been busy since in procuring testimony, in order to prepare the case for a final hearing, and to show that the complainant had no right to the fund. He denies that he was wilfully guilty of any contempt of the court. Upon this affidavit, an application has been made in his behalf, to set aside the attachment, upon the ground that the affidavit purges him of the contempt, and that he has not had an opportunity of being heard on that subject.

As relates to the suggestion in this application, that the party has not had an opportunity of being heard, to show cause against his commitment on this attachment, it is a mistake as to the fact; as has been already said, notice of the motion for the attachment was given to his counsel, who appeared and was fully heard; and this opportunity of being heard before the attachment issued, was given by the court, because it was more favorable to the defendant, and would save him from arrest, if he had any sufficient cause to show against it; and if any such cause existed, then was the time to have shown it.

As regards the question, whether a contempt has or has not been committed, it does not depend on the intention of the party, but upon the act he has done. It is a conclusion of law from the act; disobedience to the legitimate authority of the court, is, by law, a contempt, unless the party can show sufficient cause to excuse it.

As regards the acts of the party in this respect, they have been already stated. After he had been brought into court to answer for a trust fund, which he admits to be in his hands, in cash, when he answered, and while an application was pending to order the fund to be brought into court, because it was insecure in his hands, he says that he appropriated one-third of it to his own use, and paid the remaining two-thirds to others, and then sets up this open defiance of the authority of the court, as an excuse for his conduct. And as regards this defence, such as it is, he does not offer the slightest evidence to support his averment, that he had ever paid away two-thirds of this fund to any one, nor does he, in his answer, undertake to say when it was paid; for aught that appears, if the payment was ever made, it may have been done after the order was served upon him, and made for the very purpose of setting up that defence.

So too, as regards the security for the trust fund; he does not say that he was unable to have given it, either before he filed his answer, or when he distributed the trust fund. And if he was not able, at the time he dis-

tributed it, to replace it, in case the court should order it to be brought into court, or should finally decree in favor of the complainant, the distribution he made was, not only in contempt of the authority of the court, but a fraudulent attempt to defeat the just rights of the infant complainant, if the decision should be ultimately in his favor. But he does not say in his affidavit that he was unable to have given the security, when he paid away or appropriated the trust fund. And if he was able then, why is he unable now? He states no losses of property or money since that time; he does not say that the large portion of the fund which he retained for himself, has been lost, but merely that he appropriated it to his own use. If he purchased property with it, what has become of that property? Moreover, he did not, in his answer of the first of January, say he was unable to give the security, although that was an alternative presented by the order; he evaded that part of the order, and passed over it without offering any excuse for not complying with it; nor was any difficulty on that score suggested when his counsel was heard in opposition to the attachment. It is for the first time put forward in his affidavit, filed on the 26th of March, after he was in actual custody under the attachment. Such an excuse comes, at this late hour, under very suspicious circumstances, when he presents with it no schedule of his property, shows no losses since he paid away two-thirds of the trust fund, and does not even now offer to account for the one-third, which he retained in his own hands and appropriated to his own use.

As to the application again repeated in this affidavit, to abandon the proceedings to secure the trust fund, and proceed to the final hearing of the case, the court has already expressed its opinion upon a former similar application; and this constant reiteration tends only to confirm that opinion. He says that he was informed by his counsel, after his answer to the peremptory order to bring the money into court, or to give security for its forthcoming, that there would be no further proceedings until the meeting of the court on the first Monday in April. But he does not show that he was put to any disadvantage or inconvenience by this mistake of his counsel. He was not prepared, it seems, to pay the money or give the security on that day, nor has he yet tendered either, and if there had been no further proceedings until the meeting of the court, the question would then still have been precisely the same that it is now, and was when the attachment was applied for. The question to be first decided would still have been, upon the orders for the security of the fund; and there can be no final hearing, until they are disposed of. He states also, that a commission had issued, with the consent of the complainant, to take testimony and prepare the case for final hearing at the April term: but the court do not see how this circumstance affects the question. If the

complainant withdraws his application for process to secure the trust fund, that indeed would alter the case; but he has not done so. And the court would be forgetful of its duty, and surrender its whole power over trustees and trust property, if it failed to enforce its orders for the security of a trust fund, admitted to be in the hands of the trustee, when he answered, and deemed to be unsafe in his possession; for a final decree would be idle and nugatory, if, pending the litigation, a fraudulent trustee was left at liberty to waste or misapply the trust property, or place it beyond the reach of the process of the court. Certainly, this case, as it now stands, is not one in which the court would be disposed to depart from the ordinary course of chancery proceeding; for upon comparing the various answers and affidavits of the defendant, the conclusion seems to be irresistible, that this fund was partially paid away, and the residue applied to the defendant's own use, not only in contempt of the authority of the court, but for the purpose of defrauding the infant complainant of his just rights, if the decision of the court should be ultimately in his favor.

The defendant cannot exonerate himself from this imputation except in one of two ways. First. By showing by satisfactory proof, at what time two-thirds of this fund was paid away, and the other third appropriated to his own use and how appropriated; and that at the time of this payment and appropriation, he had sufficient means to replace it, if the decision of the court was against him, and if he had sufficient means at that time, how it has happened that he is not able to pay the money or secure the fund. Or, secondly. That he is now actually an insolvent debtor, and all of his property transferred to a trustee appointed by the proper legal tribunal, for the use of his creditors.

Until one of these two things is done, the attachment will not be set aside, and he must still stand committed.

NOTE TO THE OPINION.—I find from the argument of counsel, that the ground upon which the release of the party by the insolvent law, would be sufficient to discharge him from the commitment for contempt, has been misunderstood, and I, therefore, add this note to the opinion, to prevent any mistake on this point. He would be released in case he took the benefit of the insolvent law, not because his person would thereby be discharged from imprisonment for debt, for that discharge exists under the constitution of the state independently of the insolvent law. But the court would discharge him from the commitment for contempt, because he would be obliged with his petition to return a schedule of his property; and the fact that it was all conveyed to the insolvent trustees, would show that it was no longer in his power to pay the money into court, or give the security required for its forthcoming, if the final decision should be against him.